

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00433-CR

Troy **SANCHEZ**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 19-03-047-CRW
Honorable Lynn Ellison, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed: March 11, 2020

AFFIRMED

A jury convicted Troy Sanchez, Jr. of evading arrest or detention with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A). The trial court assessed punishment at ten years' confinement and a $10,000 fine. In a single issue, Sanchez contends error existed in the jury charge because the application paragraph failed to include the phrase "use of a vehicle." Sanchez contends he was egregiously harmed by the charge error. We affirm the trial court's judgment.

**JURY CHARGE ERROR**

A.      STANDARD OF REVIEW

We use a two-step process to review an alleged jury charge error.  *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  First, we determine whether error exists in the charge.  *Id.*  If there is error, we determine whether sufficient harm resulted from the error to require reversal.  *Id.* at 743–44.  The degree of harm necessary for reversal depends on whether the error was preserved in the trial court.  *Id.* at 743.  Where, as here, the appellant failed to object to the charge error at trial, we will reverse the conviction only if the record demonstrates the error caused egregious harm.  *Id.* at 743–44.

B.      CHARGE ERROR

We must first determine whether error exists in the charge.  The trial court must give the jury a written charge that sets forth the law applicable to the case.  TEX. CODE CRIM. PROC. ANN. art. 36.14.  The charge must accurately state the law and must set out all the essential elements of the offense.  *Dinkins v. State*, 894 S.W.2d 333, 339 (Tex. Crim. App. 1995).

Evading arrest or detention with a vehicle requires showing: the accused (1) intentionally fled (2) from a person he knew was a peace officer (3) attempting to lawfully arrest or detain him, and the accused (4) used a vehicle while in flight (the "vehicle element").  *See Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (discussing the elements of the offense).

Here, the application paragraph of the charge omits any mention of the use of a vehicle. The charge instructed the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 27th day of July, 2018, in Wilson County, Texas, the defendant, TROY SANCHEZ, JR., did then and there intentionally flee from MATTHEW REDD, a person the defendant knew was a peace officer, who was attempting lawfully to arrest or detain the defendant, then you will find the defendant guilty as charged in the indictment.

The vehicle element is an essential element of the offense of evading arrest or detention with a vehicle. *See id*. Because the application paragraph omits the vehicle element of the offense, it does not properly instruct the jury on the law applicable to the case. *See Hernandez v. State*, 10 S.W.3d 812, 819 (Tex. App.—Beaumont 2000, pet. ref'd) (finding charge error when the charge did not properly apply the law to the case because the application paragraph of the charge omitted an element of the offense). Thus, we conclude the charge is erroneous. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016) (finding the trial court erred by omitting the "bodily injury" element of the offense from the application paragraph of the jury charge).

C.     EGREGIOUS HARM

Having concluded error exists in the charge, we must determine whether sufficient harm resulted from the error to require reversal. Because Sanchez failed to object to the charge error at trial, we will reverse his conviction only if the record demonstrates the error caused egregious harm. *Ngo*, 175 S.W.3d at 743–44. Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017). In reviewing the record for egregious harm, we consider the entire jury charge, the state of the evidence including contested issues and the weight of probative evidence, arguments of counsel, and any other relevant information in the record. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). The record must demonstrate that the defendant suffered actual, rather than merely theoretical, harm from the charge error. *Garcia v. State*, 486 S.W.3d 602, 609 (Tex. App.—San Antonio 2015, pet. ref'd).

a.     THE ENTIRE JURY CHARGE

First, we consider the entire jury charge. The abstract paragraph of the charge provides: "A person commits the offense of evading arrest or detention with a vehicle if he intentionally

flees from a person he knows is a peace officer attempting to arrest or detain him. It is a felony offense if the person uses a vehicle while the person is in flight." The first sentence of the abstract paragraph does not correctly set forth the law regarding the offense of evading arrest or detention with a vehicle because it omits the vehicle element. The first sentence lists only the elements of the lesser-included offense of evading arrest or detention. *Compare* TEX. PENAL CODE ANN. § 38.04(a) (describing the misdemeanor offense of evading arrest or detention), *with id.* § (b)(2)(A) (describing the third-degree felony offense of evading arrest or detention with a vehicle). While the missing vehicle element is included in the second sentence, there is no language connecting the two sentences in such a manner that the jury would understand that the second sentence set forth a required element of the offense.

The jury charge then defines "peace officer," "vehicle," "intentionally," and "knowingly." The application paragraph follows, which erroneously omits the vehicle element of the offense. The charge then provides general jury instructions, which neither ameliorate nor exacerbate the charge error.

Included with the charge was a verdict form which permitted the jury to find the defendant not guilty or guilty of evading arrest or detention with a vehicle "as charged in the indictment." The indictment correctly stated each element of the offense of evading arrest or detention with a vehicle.[1] When considering the verdict form, the jury may have referred back to the indictment, which included the omitted vehicle element. The indictment also was read to the jury at trial. *See Hernandez*, 10 S.W.3d at 820 (considering whether the indictment could have "supplied the omitted element for the jury"). Additionally, when presented with the jury charge and the offense, a reasonable juror would likely have understood that the vehicle element was essential to the

---

[1] The indictment alleged that Sanchez "did then and there: while using a vehicle, intentionally flee from Matthew Redd, a person the defendant knew was a peace officer, who was attempting lawfully to arrest or detain the defendant."

offense of evading arrest or detention *with a vehicle*. *See Nava v. State*, 415 S.W.3d 289, 300–01 (Tex. Crim. App. 2013) ("We may use common sense in assessing how the jury likely understood the charge . . . .").

> b.  THE STATE OF THE EVIDENCE

Second, we consider the state of the evidence, including the contested issues and weight of probative evidence.

The contested issue at trial was one of identity—whether Sanchez or Morris, the other occupant in the vehicle, was the driver of the evading vehicle. The omitted element, whether a vehicle had been used while in flight, was not a contested issue at trial. Thus, the error in the charge did not relate to a contested issue. *See Hutch v. State*, 922 S.W.2d 166, 174 (Tex. Crim. App. 1996) (considering whether the charge error related to a contested issue).

The evidence at trial consisted of officer testimony and video footage. There is ample evidence in the record indicating a vehicle was used to evade Officer Redd of the Floresville Police Department and other law enforcement personnel. This evidence was uncontested, undisputed, and uncontradicted. *See Johnson v. State*, 981 S.W.2d 759, 763 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) ("When the evidence is overwhelming, it is obviously less likely the jury was influenced by an erroneous jury instruction than by the weight of the probative evidence itself.").

Officer Redd testified that he was on patrol in Floresville, Texas when he observed a vehicle coming his direction with its high-beam headlights on. When the vehicle passed him, Officer Redd testified that he was able to positively identify Sanchez as the driver of the vehicle and knew Sanchez had an active arrest warrant. Officer Redd then initiated a traffic stop. Officer Redd's body-cam footage was admitted into evidence and played for the jury. The body-cam footage shows the vehicle parked on the side of the road as Officer Redd approached the driver-side door of the stopped vehicle. Officer Redd asked the driver of the vehicle to step out of the

vehicle, to which the driver responded, "yes sir." Almost immediately thereafter, the vehicle is shown taking off down the road. Officer Redd ran back to his patrol car, and a vehicle pursuit ensued.

According to the body-cam footage, Officer Redd and other law enforcement personnel pursued the vehicle for approximately fifteen minutes, until Sanchez was apprehended in San Antonio, Texas. During the pursuit, Officer Redd testified that the vehicle reached speeds up to and in excess of 100 miles per hour and was driving recklessly from lane to lane. Officer Redd said the Texas Department of Public Safety ("TDPS") attempted to stop the fleeing vehicle by positioning officers on the side of the highway to deploy a spike strip. The spike strip was unsuccessful. Officer Redd, about eight other patrol cars, and a TDPS helicopter pursued the vehicle from the outskirts of Floresville into San Antonio. The pursuit ended when the vehicle exited the highway onto Military Drive in San Antonio and crossed over a concrete median that separated the opposing lanes of traffic, which, according to Officer Redd, disabled the vehicle.

Deputy Toribio Garcia of the Wilson County Sheriff's Office assisted in the vehicle pursuit. Deputy Garcia's dash-cam footage was admitted into evidence and played for the jury. The dash-cam footage shows Deputy Garcia driving directly behind the vehicle during the entire pursuit. After the vehicle was disabled in San Antonio, the dash-cam footage shows Sanchez exiting the driver-side door of the vehicle, running off on foot, and being apprehended less than thirty seconds later.

Based on the foregoing, there is sufficient evidence in the record to allow a jury to find, beyond a reasonable doubt, that a vehicle was used to evade Officer Redd and other law enforcement personnel. *See Riley*, 447 S.W.3d at 926 (finding no egregious harm based on the state of the evidence supporting the omitted element). The officers' testimony and video footage leave little doubt that a vehicle was used while in flight. Thus, any harm resulting from the

omission of the vehicle element from the application paragraph of the charge was likely ameliorated by the uncontested evidence supporting that element. *See Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985) ("Considering that the evidence of the prior convictions was undisputed, uncontradicted, and seemed to have been taken almost as a 'given' by the parties, we hold that the . . . [charge error], was not so harmful that it deprived appellant of a fair and impartial trial.").

  *c.*  ARGUMENTS OF COUNSEL

  We next consider the arguments of counsel. *See Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015) (considering "whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge"). In its opening statement, the State explained it had the burden to prove beyond a reasonable doubt each element of the charged offense. In describing each element of the offense, the State included the vehicle element. In its closing argument, the State again reiterated it had the burden to prove beyond a reasonable doubt that a vehicle had been used to evade arrest or detention. Thus, any harm resulting from the omission of the vehicle element from the application paragraph of the charge was likely ameliorated when the State twice explained, once in its opening statement and again in its closing argument, that it had the burden to prove beyond a reasonable doubt that a vehicle had been used while in flight.

  In his closing argument, defense counsel conceded that a vehicle had been used to evade arrest or detention. Defense counsel acknowledged that Officer Redd's body-cam footage showed the vehicle speeding off as Officer Redd approached the vehicle on foot. Defense counsel then stated, "we're not contesting that there was a vehicle that was involved in an evading." Defense counsel's closing argument centered around defendant's sole defensive strategy, that the State failed to prove beyond a reasonable doubt that Sanchez "was the driver of the vehicle during the

chase." Thus, any harm resulting from the omission of the vehicle element from the application paragraph of the charge was likely ameliorated by defense counsel's concession that a vehicle had been used while in flight.

### d.     OTHER RELEVANT INFORMATION

Sanchez contends that the omission of the vehicle element from the application paragraph resulted in egregious harm because it permitted the jury to find him guilty on an uncharged, lesser-included offense of evading arrest or detention. Sanchez contends this was not merely theoretical harm because the evidence presented at trial shows Sanchez committed the misdemeanor offense of evading arrest or detention by evading the officers on foot after the vehicle became disabled. However, in his closing argument, defense counsel emphasized to the jury the offense that was before their consideration: "Who cares if he—if he started running on foot. We're not here for a trial for evading on foot. We're here for a trial on evading in a vehicle."

Having considered the jury charge error in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole, we conclude the charge error did not cause Sanchez egregious harm. *See Olivas*, 202 S.W.3d at 144.

### CONCLUSION

We overrule Sanchez's sole issue on appeal and, accordingly, affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH